**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| JEFFERY BARBEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:04-0245 |
| | ) | JUDGE HAYNES |
| UNARCO MATERIALS HANDLING, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff, Jeffery Barbee, a Kentucky citizen, filed this action under 28 U.S.C. § 1332, the federal diversity statute, against the Defendant Unarco Material Handling, Inc. ("Unarco"), his former employer and a corporation with its principal place of business in Tennessee. Plaintiff asserts a state law claim of retaliation discharge alleging that the Defendant terminated him because Plaintiff had multiple and successful workers' compensation claims and lawsuits against the Defendant. The parties proceeded with discovery.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 18), contending that Plaintiff's state law claim is preempted by federal law as by claims necessarily invokes the interpretation of the collective bargaining agreement that governs the Defendant's employees. Second, the Defendant contends that Plaintiff lacks proof to support a judgment on his retaliatory discharge claim.

In his response, Plaintiff argues that his proof establishes the Defendant's retaliatory motive in his termination, citing internal e-mails. Thus, because this proof is essential to his claim, Plaintiff argues that the Defendant's motion for summary judgment (Docket Entry No. 18) should be denied. Yet, Plaintiff does not analyze the Defendant's preemption argument.

(Docket Entry No. 30).

**A. Findings of Fact**[1]

Unarco operates a manufacturing plant in Springfield, Tennessee, assembling large industrial racks that required heavy manual labor. (Docket Entry No. 26, Barbee Deposition at pp. 68-69). Unarco's hourly employees are represented by the International Association of Machinists and Aerospace Workers, Local Lodge 1441("Union"). Id. at 18. During Plaintiff's employment, the Union and Unarco had a collective bargaining agreement ("CBA") that governs the terms and conditions of the hourly employees' employment, including termination. Article IX of the CBA contains a grievance procedure for disputes about its interpretation. (Docket Entry No. 22, Ralston Affidavit at Exhibit A at p. 31).

Unarco hired Jeffery Barbee in 1992 as a material handler, a position that he held throughout his employment at Unarco. (Docket Entry No. 26, Plaintiff Deposition at pp. 18, 56-58). Plaintiff's job included lifting metal racks that weighed in excess of 100 pounds. Id. 68-69. During his employment at Unarco, Plaintiff had multiple work-related injuries, the earliest of these injuries occurred and was reported in 1996. Id. at p. 33. From 1998 through 2001, Plaintiff suffered from bilateral carpal tunnel and sustained multiple injuries to his left and right shoulders. Id. at pp. 32, 39, 42 and 5 1-52. Unarco paid all medical expenses for Plaintiff's

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Based upon the parties' statement of undisputed facts and the applicable law, the Court concludes that there are not any material factual disputes. This section constitutes findings of fact under Fed. R. Civ. P. 56(d).

work reported injuries. Id. at pp. 56-57).

Beginning in 1999, Plaintiff filed multiple legal actions against Unarco for worker compensation benefits on the injuries. Id. at p.56. For each injury, Plaintiff asserted permanent disability and Unarco paid disability benefits. Id. at p. 33, 59, 113. In addition, Unarco provided accommodations for Plaintiff, including multiple and extended leaves of absences and temporary work assignments consistent within Plaintiff's physical and medical restrictions. Id. at pp. 45-46, 52-53, 62-69, 74. After his right shoulder surgery, Unarco permitted Plaintiff to bypass the bidding process in the CBA for a temporary assignment in the press department, at a higher grade position for approximately ten months. Id. at pp. 62-63, 77, 79.

On or about September 5, 2001, while working in the press department, Plaintiff was placed on a medical leave of absence due to the permanent restrictions that Dr. Henry Jao, his treating physician, placed upon him due to the condition of Plaintiff's right shoulder injury. Id. at pp. 79-80, 84-85. Plaintiff admits that he is unable to perform his regular job at Unarco with this medical restriction. Id. at p. 68.

During his medical leave, Plaintiff retained his seniority rights under the CBA, but did not receive any other benefits or compensation. Id. at pp. 86-87. The union informed Plaintiff that if any jobs were available during his medical leave, the Union would inform Plaintiff to allow him to bid on those jobs. Id. at p. 88. The union never contacted Plaintiff during his leave, and Plaintiff is unaware of any available jobs, within his medical restriction, during his leave. Id. Plaintiff remains physically unable to perform his former job at Unarco. Id. at pp. 124-125.

On or about April 3, 2003, Robert Ralston, an Unarco official sent Plaintiff a letter that

his seniority rights were terminated. Id. at p. 90 and Exhibit thereto). At that time, Plaintiff's medical leave of absence had extended for approximately 19 months. Id. at pp. 75, 88. Under the new CBA, ratified on March 31, 2003, the approved medical leave of absence was shortened to18 months from 24 months. Id. at p. 99. In pertinent part, the CBA, as amended, reads as follows:

> 62. Section 8. An employee will lose his seniority under any of the following conditions:
>
> (a) If he resigns;
>
> (b) If he is discharged for just cause; (including shop rules violation, unsafe practices or drug violation;
>
> (c) If he is laid off for twenty-four (2) consecutive months;
>
> (d) If he is absent due to illness for twelve (12) consecutive months. The Company agreed to extend seniority retention for six (6) additional months for these employees that have five (5) years or more seniority;
>
> (e) If he fails to report for work at the expiration of an authorized leave of absence;
>
> (f) If he is absent for three (3) consecutive working days without permission or without notifying the Company, unless a satisfactory reason for not notifying is given.

Docket Entry No. 22, Ralston Affidavit at Exhibit A thereto at p. 22, §8(d).

The union's and Unarco's negotiations on the 2003 CBA, did not include any discussions of Plaintiff or any other individuals affected by the new 18-month medical leave provision. (Docket Entry No. 24, Ralston Deposition at p. 68). Prior to this CBA change, Plaintiff's understanding was that he could remain on a medical leave for two years. (Docket Entry No. 26, Plaintiff Deposition at p. 99).

With the new CBA, Ralston terminated Plaintiff and five other employees who had

been on medical leave for more than 18 months. (Docket Entry No. 24, Ralston Deposition at p. 49). No other management employees at Unarco were involved in this decision. Id. When Ralston made his termination decision, any workers' compensation lawsuits were not considered. (Docket Entry No 22, Ralston Affidavit at ¶5). Ralston was unfamiliar with Plaintiff's workers' compensation claims after 2001. After that date, the administration of workers' compensation claims process was moved from the human resources department to the safety department. Id. at ¶ 4.

The union did not notify Plaintiff of the proposed change to 18 months from 24 months for a medical leave of absence. (Docket Entry No. 26, Plaintiff's Deposition at p. 93). Plaintiff did not file a grievance with the union about his termination nor questioned anyone with the company about his termination. Id. at p. 94. Although Plaintiff was not a dues-paying member of the union, he was familiar with the grievance process as reflected in Plaintiff's earlier grievance with the union on job assignments. Id. at pp. 25-28, 93.

For his claim, that he was terminated because of his workers' compensation lawsuits, Plaintiff cites a conversation with Bill Liberato, Unarco's CEO in December 2000 during which Liberato informed Plaintiff that he would fire anyone who filed a fraudulent workers' compensation claim. (Docket Entry No. 24, Plaintiff's Deposition at pp. 73, 101-103). On the same day, Plaintiff cites a statement by Ralston to Barry Nixon, the then union president that Plaintiff was trying to defraud the company. Id. at p. 108. Nixon, however, did not confirm that Ralston made such a statement to him. (Appendix at Exhibit B, pp. 49, 57-59). Finally, Plaintiff cites a series of postings on Unarco's bulletin board in 2000 warning employees not to file fraudulent workers' compensation claims that Plaintiff contends were directed at him. Id. at pp.

110-111. Ralston created some of the posters in question for display on the Company's bulletin board and admitted that some of the posters created by him were based on certain employees at Unarco. (Docket Entry No. 24, Ralston at pp. 23-36). Ralston, however, insists that he did not direct any posters at Barbee. Id. at pp. 23-36.

### B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined

a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc. , 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrating the absence of a genuine issue of material fact,' the nonmoving party

then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1480 (cites omitted). See alsoHutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil

> case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252 , 106 S. Ct. 2505, 91 L.Ed.2d at 211-212, 214 (citation omitted and emphasis added).

It is likewise true that

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party

> sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'
>
> 6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'
>
> 9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> 10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The Defendant argues that Plaintiff's claim is preempted by §301 of the Labor Management Relations Act. Section 301(a) of the Labor Management Relations Act preempts any state law claim based upon a collective bargaining agreement or a state law claim the outcome of which the depends upon an interpretation of the agreement's terms. 29 U.S.C. §

185(a). This preemption policy protects the uniformity of interpretation of labor contracts. In Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 409 (1988), the Supreme Court explained that "as long as the state-law claim can be resolved without interpreting the [collective bargaining] agreement itself, the claim is 'independent' of the agreement for §301 pre-emption purposes."

In Terwilliger v. Greyhound Lines. Inc., 882 F.2d 1033 (6th Cir. 1989), the Sixth Circuit summarized the Supreme Court's precedents on preemption under § 301:

> The Supreme Court has determined that section 301 not only confers federal jurisdiction over controversies involving collective bargaining agreements, but also authorizes the federal courts to fashion a body of federal law for the enforcement of section 301. Textile Workers v. Lincoln Mills, 353 U.S. 448, 451, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957). In Teamsters v. Lucas Flour, 369 U.S. 95, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962), the Court determined that the federal law preempts local law so that a uniform body of labor law can be developed to avoid conflicts in the interpretation of collective bargaining agreements. Then, in Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985), the Court determined that the preemptive effect of the federal labor law extended to state-law tort claims which are "inextricably intertwined with consideration of the terms of the labor contract" as well as pure contract claims. In 1987, the Court summarized the preemption doctrine as follows: "Section 301 governs claims founded directly on rights created by collective bargaining agreements, and also claims substantially dependent on analysis of a collective bargaining agreement." Caterpillar Inc. v. Williams, 482 U.S. 386, 107 5. Ct. 2425, 2431, 96 L. Ed. 2d 318 (1987).

Id. at 1036.

In DeCoe v. Gen. Motors Corp., 32 F.3d 212, 216 (6 th Cir. 1994), the Sixth Circuit defined its two-step approach to determine whether § 301 preemption applies.

> First, the district court must examine whether proof of the state law claim requires interpretation of the collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is

warranted.

DeCoe, 32 F.3d at 216.

As applied here, to resolve Plaintiff's retaliation claim, the Court must interpret the 2003 amendment to the CBA changing the duration of medical leave for the Defendant's employees. Plaintiff's claim necessarily implicates a specific provision of the CBA. Applying DeCoe, the Court concludes that Plaintiff's claim is preempted because to prove his claim, Plaintiff must rely on the CBA for his claim.

In Beckwith v. Diesel Tech. Co., 2000 U.S. App. LEXIS 14074 (6 th Cir. May 31, 2000), the Sixth Circuit considered a workers' compensation retaliatory discharge claim where, the wife was terminated for violating the company's attendance policy because she had been absent to accompany her husband to a doctor's appointment. Id. at *2-3. The wife filed a wrongful discharge claim, alleging that her termination was a mere pretext for the employer's "efforts to retaliate against her for [her husband's] workers' compensation claims." Id. at *4. The district court granted summary judgment for the employer and the Sixth Circuit affirmed. In analyzing the wife's claim, the Sixth Circuit stated:

> In the complaint, Karen claimed that DTC' s reason for terminating her — repeated absenteeism — was pretext for firing her in response to her husband's worker's compensation claim. At trial, DTC' s defense would surely be that it fired Karen because she failed to abide by the terms of the CBA, and that it disciplined and then terminated her pursuant to the CBA. A court will have to interpret the CBA, which requires that all vacation time off must be pre-approved, and which permits DTC to discipline employees, to see if that defense is valid. Because Karen's retaliatory discharge claim would require interpretation of collective bargaining terms, Karen's claim is preempted.

Id. at * 10.

Here, the CBA is at the heart of Plaintiff's claim on Unarco's application of the

seniority rights provision.

In any event, Tennessee law does not recognize retaliation claims where the plaintiff has Linglexhausted all medical leave provided by the company and is physically unable to perform his job. Anderson v. Standard Register Company, 857 S.W.2d 555, 558-59 (Tenn. 1993). In Anderson, the employer terminated the plaintiff after she exhausted all available leave time under a facially neutral leave of absence policy. 857 S.W.2d at 556. The Tennessee Supreme Court upheld the dismissal of a plaintiff's claim as a matter of law because the substantial factor in the employer's termination decision was exhaustion of leave. Id. at 559. Accord Bales v. Dialysis Clinic, Inc., 2004WL2709211 (Tenn. Ct. App. Nov. 29, 2004) (employee could not establish a retaliation claim when he exhausted all of the medical leave provided by the company's policy and remained physically unable to perform his job).

In sum, the Court concludes that Plaintiff's retaliation claim is preempted by Section 301 of this LMRA. The Court also concludes that under Anderson, Tennessee law does not allow recovery here. Thus, the Defendant's motion for summary judgment should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 21st day of October, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge

Case 3:04-cv-00245 Document 41 Filed 10/21/05 Page 14 of 14 PageID #: 636